## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

MID-CONTINENT EXCESS & SURPLUS INSURANCE COMPANY,

CASE NO. 1:19-CV-02365

                    Plaintiff,

JUDGE PAMELA A. BARKER

-vs-

EXPERIENTIAL SYSTEMS, INC.,

MEMORANDUM OPINION AND ORDER

                    Defendant.

Currently pending are (1) Plaintiff Mid-Continent Excess & Surplus Insurance Company's Motion for Summary Judgment (Doc. No. 64); and (2) Defendant Experiential Systems, Inc.'s Motion for Summary Judgment (Doc. No. 66). Briefs in Opposition were filed on August 18, 2021. (Doc. Nos. 67, 69.) Both parties filed replies in support of their respective Motions on September 1, 2021. (Doc. Nos. 71, 72.) For the following reasons, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED, as set forth herein.

## I.    Background

In 2014, Experiential, a company that designs and builds "challenge course" equipment, including zip lines, high-ropes climbing structures, and climbing walls, sought insurance coverage for its business. (Experiential Counterclaims, Doc. No. 66-4, ¶ 14.) Experiential's insurance agent Hibbs-Hallmark & Company Insurance Agency communicated the nature of Experiential's business to Veracity Insurance Solutions. (Experiential Third-Party Complaint, Doc. No. 66-4, ¶¶ 12-17.) Veracity, in turn, explained Experiential's insurance needs to Mid-Continent. (*Id.*) Through Hibbs-Hallmark and Veracity, Mid-Continent agreed to issue a commercial general liability insurance

policy, numbered 09-SL-000006056, to Experiential.  (*Id.*)  Experiential's initial policy was effective from September 16, 2014 to September 16, 2015.  (*Id.*)  Mid-Continent and Experiential renewed this policy for the period of September 16, 2015 to September 16, 2016.  (*Id.*)  Mid-Continent and Experiential again renewed this policy, numbered 09-SL-000010206 (the "Policy"), for the policy period of September 16, 2016 to September 16, 2017, the policy period at issue in this case.  (Mid-Continent Complaint, Doc. No. 1, ¶ 49.)

### A. The May – June 2017 Emails

On May 3, 2017, Experiential's insurance agent Robert Monaghan of Hibbs-Hallmark contacted Cameron Allen of Veracity to inquire about the scope of Mid-Continent's coverage under the Policy.  Monaghan wrote the following message to Allen:

> I am reviewing Keith Jacobs['s] policy and in the GL classifications we are including the sale of sporting goods equipment.  And it's a large premium.  However, there is an exclusion, excluding BI claims related to sports or athletic.  So what exactly are they providing coverage wise for this large premium[?]  Since all of his exposure is related to selling or constructing items/structures used by patrons?
>
> Please have the Athletic Participation exclusion removed or replace it with the original form that only applies if the insured is sponsoring or operating such activities.

(Ex. A to Mid-Continent's Motion, Doc. No. 64-1, PageID# 546.)  Allen forwarded Monaghan's email to Mid-Continent employee Stephanie Wolf, asking Wolf to address Monaghan's concern as soon as possible.  (*Id.* at PageID# 545.)  Wolf sent the following response to Allen on May 3, 2017:

> Cameron good afternoon, we are not a market for the use of zip lines.  We are covering the building of the zip line, but not the use of the zip line.
>
> The exclusion cannot be removed.
>
> If you have any other questions please let me know.

(*Id.*, reproduced as in original.)

2

Shortly thereafter, Allen sent the following reply to Wolf:

Our client doesn't use or operate a Zipline, he builds and sells equipment to and for the industry.  The insured sells equipment and that is concern with your exclusion. We need to remove the exclusion for the purpose of the equipment sales, which are you charging a premium for that has a completed ops exposure.

(*Id.* at PageID# 544, reproduced as in original.)

Wolf then sent the following response to Allen:

Cameron when we agreed to look at zip line builders we informed you that participants would be excluded.  Nothing about that has changed.

I understand your concern but I cannot remove the exclusion.

(*Id.* at PageID# 543.)

On May 30, 2017, Allen sent another email to Wolf, inquiring whether Mid-Continent would "replace on this account the Athletic Participant Exclusion ML1287 with the Athletic Participant Exclusion CG 2101?"  (*Id.*)  It does not appear that Wolf responded to this email.  Thus, on June 1, 2017, Allen sent a follow-up email to Wolf:

Steph,

I just received the following email from my retail agent:

I just got off the phone with Keith Jacobs.  He was asking me if we were able to remove the ML 1287 and replace it with the form the insured agreed to…the CG 2101.

He wants me/us to get this correct asap or rewrite his coverage.

Please advise.
Robert

(*Id.* at PageID# 541-42.)

Wolf replied to Allen's email shortly thereafter:

Cameron sorry I'm not going to be able to remove the exclusion.  We just aren't a market for anything related to the use of a zip line.  Changing the form to CG2101

3

isn't going to change all the issues we discussed on the phone at the beginning of last month.

I left you a message. I will be in the office all day tomorrow if you need or want to vent.

(*Id.* at PageID# 541.)

Allen responded to Wolf's email a few hours later:

We understand MCG doesn't want to over the use of a zip line and we are fine with that.  The exclusion being used is over[-]reaching and takes away all BI coverage for this insured.  We are charging for the sales of products/goods, but not providing any coverage for the premium charge?  What do you believe we are providing coverage for?  The coverage is for completed ops, not operations.

We need to come to some sort of compromise on these accounts.

(*Id.* at PageID# 540.)

On June 2, 2017, Wolf sent a response to Allen's email:

Cameron our policy would cover an occurrence that would result from BI or PD.  BI is going to be limited to others not engaged in the activity which is still an exposure for the insured as well as any PD from the failure of their products sold.

If you need to vent ok, call.  I've got nothing else to say or explain but I will listen.

THANKS.

(*Id.*, reproduced as in original.)

### B.    Brittney Bash's August 14, 2017 Accident at Hiram House Camp

On August 14, 2017, Brittney Bash, an 18-year-old incoming freshman at Baldwin Wallace University, attended BW's Honors Program Orientation at Hiram House Camp in Chagrin Falls, Ohio.  (Bash First Amended Complaint, Doc. No. 66-8, ¶¶ 6.)  As part of her orientation, Brittney was invited to participate in Hiram House's "Challenge Adventure Program," which included traversing Hiram House's High Rope Challenge Course.  (*Id.*)  Experiential designed and built Hiram

4

House's high ropes course and provided safety training to Hiram House employees regarding the proper and safe operating of the high ropes course.  (*Id.* at ¶¶ 34-49.)

Brittney donned a helmet, harness, and two leg lanyards before she began climbing the high ropes course.  (*Id.* at ¶ 11.)  However, while she was climbing on the high ropes course, Brittney lost her balance and fell forward off the wire she was standing on.  (*Id.* at ¶ 12.)  As she fell, Brittney's leg lanyards became tangled around her neck and Brittney was hanged by her neck with the full weight of her body.  (*Id.*)  She lost consciousness and was suspended above the ground for at least six minutes, until Hiram House employees eventually figured out how to lower her to the ground. (*Id.* at ¶ 13.)  Brittney was rushed to Hillcrest Hospital, where she remained in a coma for several days.  (*Id.* at ¶ 14.)  She suffered an anoxic brain injury because of the deprivation of oxygen to her brain for several minutes.  (*Id.*)  Since her accident, Brittney "continues to experience permanent and substantial physical cognitive, and emotional sequelae from her anoxic brain injury."  (*Id.* at ¶ 15.)

### C.  Mid-Continent's Initial Denial of Coverage to Experiential

On August 17, 2017, Veracity sent Mid-Continent a notice of a new claim on behalf of Experiential, stemming from Brittney's accident a few days prior.  (Ex. G Notice of Occurrence/Claim, Doc. No. 66-10, PageID# 815-16.)  On September 19, 2017, Mid-Continent Claims Supervisor Alycia Stevens issued an internal memorandum to Michael Brader, recommending that Mid-Continent "disclaim coverage based on exclusion ML1287 – Athletic Participants."  (Ex. I, 9/19/2017 Mid-Continent Memo, Doc. No. 66-11, PageID# 825-26.)  On October 23, 2017, Brader sent an interoffice memorandum to Derek Winsworth in Mid-Continent's Tulsa Claims Office, indicating that the Coverage Committee reviewed Experiential's claim for Brittney's accident and "determined that a coverage denial is warranted."  (Ex. J, 10/23/2017 Mid-Continent Memo, Doc.

No. 66-12, PageID# 828.)  Brader advised Winsworth to "[f]irst note policy endorsement ML 1287 as the reason for our declination.  Followed by inclusion of policy exclusion b. and endorsements: CG 2152 (all operations involving training and/or inspections), CG 2233, CG 2224, CG 2279 and SL 9021.  Advise the Insured if suit is filed to forward us a copy of the Complaint for review."  (*Id.*, reproduced as in original.)

On October 31, 2017, Mid-Continent notified Experiential that it had completed its review of Experiential's claim and determined that Experiential's "policy does not provide coverage for the claims being made."  (Ex. K, 10/31/2017 Denial Letter, Doc. No. 66-13, PageID# 830-38.)  Mid-Continent determined that several policy provisions operated to bar coverage for Brittney's accident, including: "Exclusion – Athletic Participants ML 1287," "Exclusion – Designated Ongoing Operations CG2153," "Exclusion – Testing or Consulting Errors and Omissions – CG 2233," "Exclusion – Inspection, Appraisal and Survey Companies – CG 2224," "Exclusion – Contractors Professional Liability – CG 2279," and "Exclusion – Breach of Contract, SL 9021."  (*Id.* at PageID# 831.)

### D.    The Underlying *Bash* Lawsuit

On August 14, 2018, Brittney and her parents Jason and Christy Bash, filed a lawsuit against Hiram House, Experiential, and John Does 1-5 in the Cuyahoga County Court of Common Pleas. (Ex. G, 9/4/2019 Letter from Mid-Continent to Experiential, Doc. No. 66-9, PageID# 801.)  On April 4, 2019, the Bashes filed the operative First Amended Complaint in the underlying state court lawsuit. (*Id.*; *see also* Doc. No. 66-8.)

The Bashes assert six claims against Experiential in the FAC.  (Doc. No. 66-8.)  In Count 4, Negligent Training, the Bashes allege that Experiential provided safety training regarding the proper

and safe operations of the High Ropes Challenge Course, the proper and safe use of the High Ropes Challenge Course safety equipment provided by Experiential, and/or emergency rescue training to Hiram House's employees.  (*Id.* at ¶¶ 35-39.)  In Count 5, Strict Product Liability, the Bashes allege that the high ropes course and its safety equipment were allegedly defective in their manufacture and construction and design, that the equipment contained inadequate warnings or instruction, and that it failed to conform with Experiential's representations.  (*Id.* at ¶¶ 40-49.)  In Count 6, the Bashes allege that the high ropes course and/or its safety equipment was allegedly defective, which was the proximate cause of Brittney's injuries.  (*Id.* at ¶¶ 50-55.)  In Count 7, Negligence, the Bashes allege that Experiential breached its duty to design and manufacture the high ropes challenge course and/or its safety equipment in a manner that would not injure Brittney in the normal course of using the product.  (*Id.* at ¶¶ 56-62.)  In Count 8, Breach of Warranties, the Bashes allege that Experiential breached its express and implied warranties by designing, manufacturing, promoting, selling, supplying, delivering, and assembling the high ropes course and/or its safety equipment in an unsafe and unfit condition, as follows: (1) designing and manufacturing the course and safety equipment such that they could be used in a manner that would result in strangulation of the user while traversing the course; (2) designing and manufacturing the course and safety equipment without a mechanism by which the course and/or safety equipment could not strangle the user while traversing the course; (3) designing and manufacturing the course and safety equipment, which lacked instructions for use and/or warnings regarding the risk of strangulation while traversing the course; and (4) designing and manufacturing the course and safety equipment which lacked those safety elements and devices necessary to prevent Brittney's accident.  (*Id.*)  In Count 9, Loss of Consortium, Jason and Christy

allege that they have been deprived of the society, companionship, and assistance of their daughter, and therefore have suffered a loss of consortium.  (*Id.* at ¶¶ 70-73.)

In April 2019, Mid-Continent circulated an interoffice memorandum indicating that the Coverage Committee determined that Mid-Continent would provide Experiential with a defense in the *Bash* lawsuit under a reservation of Mid-Continent's rights.  (Ex. N, 4/22/2019 Mid-Continent Memorandum, Doc. No. 66-16, PageID# 847.)  Mid-Continent also indicated that it would seek to file a declaratory judgment action on its coverage issues.  (*Id.*)

On September 4, 2019, Mid-Continent notified Experiential via letter that it would "agree to defend Experiential Systems in the *Bash* Lawsuit, subject to a full and complete reservation of rights including, but not limited to, the right to assume or withdraw from the defense, the right to deny indemnity coverage, and the right to bring a declaratory judgment action against Experiential Systems, seeking a declaration of no coverage relative to the *Bash* Lawsuit."  (Ex. O, 9/4/2019 Letter to Experiential, Doc. No. 66-17, PageID# 851.)

### E.    Procedural History

On October 10, 2019, Mid-Continent filed this declaratory judgment action, asserting that multiple Policy provisions bar coverage for the claims alleged in the *Bash* lawsuit and, therefore, Mid-Continent has no duty to defend Experiential against the *Bash* lawsuit or indemnify it for any judgment or settlement entered in the *Bash* lawsuit.  (Doc. No. 1.)  In response to Mid-Continent's Complaint, Experiential filed four counterclaims on January 23, 2020, which it amended to include a fifth counterclaim on May 12, 2020.[1]  (Doc. Nos. 15, 43.)  Experiential's five counterclaims are as

---

[1] Experiential's four original counterclaims are identical to its first four counterclaims in the operative Amended Counterclaims pleading.  (*Compare* Doc. No. 15 *to* Doc. No. 43.)

follows: (1) anticipatory breach of contract; (2) breach of contract; (3) fraud and fraudulent misrepresentation; (4) fraudulent concealment; and (5) insurer bad faith.  (Doc. No. 43, ¶¶ 29-78.) Experiential also filed a third-party complaint against Hibbs-Hallmark and Veracity on January 23, 2020, but subsequently stipulated to the dismissal of its third-party complaint against both parties. (*See* Doc. Nos. 15, 40, 53, 54.)

The parties filed their cross-Motions for Summary Judgment on July 19, 2021.[2]  (Doc. Nos. 64, 66.)  Mid-Continent and Experiential filed oppositions to the other's motions on August 18, 2021, to which each replied on September 1, 2021.  (Doc. Nos. 67, 69, 71, 72.)  Thus, the parties' motions are ripe and ready for review.

## II.    Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).  "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"

---

[2] Each party also filed a Statement of Undisputed Material Facts, separate from their briefs in support of their Motions for Summary Judgment.  (*See* Doc. Nos. 65, 66-2.)  Under the Local Rules, dispositive motion memoranda "must not exceed . . . thirty (30) pages for complex cases" without "prior approval of the Judicial Officer . . . ."  L.R. 7.1(f).  Further, "[e]very memorandum related to a dispositive motion must be accompanied by a certification specifying the track, if any to which the case has been assigned and a statement certifying that the memorandum adheres to the page limitations set forth in this section."  *Id.*  The parties failed to obtain the Court's prior approval to file these Statements of Facts and also failed to provide any certification regarding page limits.  The addition of the parties' Statements of Undisputed Material Facts—not to mention each party's *response* to the other's Statement, which accompanied the parties' Oppositions—pushes the page count significantly above that which the Local Rules permit.  The information provided in these Statements of Fact is largely repetitive of what the parties already presented in their briefs and could have been more succinctly presented to the Court by simply appending the relevant documents to the Motions (the Court notes that Mid-Continent did not attach copies of the Policy or the Bash FAC to its Motion at all).  Neither party moves to strike the other party's overlong Statement of Facts and so the Court will not *sua sponte* strike them.  However, the parties are admonished to adhere to this District's Local Rules in the future.

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487.

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018).  In addition, "the moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014).  The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008).  "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09.  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

### III.     Analysis

#### A.     Interpretation of Contracts Under Illinois Law

The parties agree that Illinois law applies to the interpretation of the Policy.  (*See* Doc. No. 64, PageID# 514; Doc. No. 66-1, PageID# 568-69.)  The Court will briefly address the general principles governing the interpretation of insurance contracts under Illinois law, which will inform the Court's subsequent analysis of the parties' arguments.  Under Illinois law, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17 (Ill. 2005) (citations omitted).  "In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement." *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill.2d 384, 391 (Ill. 1993) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108 (Ill. 1992); *de los Reyes v. Travelers Insurance Cos.* 135 Ill.2d 353, 358 (Ill. 1990)).  "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Id.*  "If the words in the policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Id.* (citing *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill.2d 1, 57 (Ill. 1981)).  "The court will not search for ambiguity where there is none." *Id.*  Further, if the language of the contract is facially unambiguous, the contract is interpreted without the use of parol evidence. *Benedict v. Fed. Kemper Life Assur. Co.*, 759 N.E.2d 23, 27 (Ill. Ct. App. 1st Div. Oct. 9, 2001).

11

Conversely, "if the terms are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer who drafted the contract." *West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, at *5 --- N.E.3d --- (Ill. 2021) (citing *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (Ill. 1997)). However, before this principle of contract construction is applied, a court may consider parol evidence bearing on the ambiguous term's meaning. *CNA Cas. of California v. E.C. Fackler, Inc.*, 836 N.E.2d 732, 736 (Ill. Ct. App. 1st Dist. Sept. 20, 2005) ("[I]f a court finds that the language of the Policy is susceptible to more than one meaning, then an ambiguity is present, and we may consider parol evidence to resolve the ambiguity.") (citing *Benedict*, 759 N.E. at 23). *See also, e.g., Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 999-1000 (7th Cir. 2018) (applying Illinois law and concluding that extrinsic evidence was admissible to resolve a facial ambiguity in an insurance contract); *Schuchman v. State Auto Prop. and Cas. Ins. Co.*, 733 F.3d 231, 238 (7th Cir. 2013) (same). "Any unresolved ambiguity will be construed against the insurer." *CNA Cas. of California*, 836 N.E.2d at 736 (citing *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill.2d 381, 393 (Ill. 2005)).

In this declaratory judgment action, the Court must determine whether Mid-Continent has a duty to defend and/or indemnify Experiential in the underlying *Bash* lawsuit. The Court must compare the allegations in the underlying *Bash* complaint to the Policy language to determine whether Mid-Continent's duty to defend has arisen. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55 (Ill. 2005). A duty to defend arises if the allegations in the *Bash* FAC fall within or potentially within the Policy's coverage. *Krishna Schaumburg*, 2021 IL 125978, at *5 (citing *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193 (Ill. 1976) (a duty to defend arises when the allegations in the underlying complaint allege facts within or potentially within the coverage

12

of the policy)); *see also, e.g., Gen. Agents Ins. Co. of Am., Inc.*, 215 Ill. 2d at 154-55 ("An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage.").  Moreover, even "if several theories of recovery are alleged" in the underlying *Bash* complaint against Experiential, Mid-Continent's "duty to defend arises even if only *one* of several theories is within the potential coverage of the policy." *Gen. Agents Ins. Co. of Am., Inc.*, 215 Ill. 2d at 155 (citing *United States Fidelity & Guaranty Co.,* 144 Ill. 2d 64, 73 (Ill. 1991)) (emphasis added).

Mid-Continent contends that the *Bash* FAC allegations do not come within the Policy's coverage because one or more of the Policy's exclusions bar coverage for all of the Bashes' claims against Experiential.  (Doc. No. 64, PageID# 511.)  Experiential asserts that none of the at-issue exclusions preclude coverage for all of the underlying *Bash* claims and, thus, Mid-Continent is obligated to defend Experiential.  (Doc. No. 66-1, PageID# 566.)  Accordingly, the Court must construe the terms in the Policy to determine whether *all* of the underlying claims against Experiential in the *Bash* lawsuit are excluded from coverage.

## B.  Athletic Participants Exclusion

The Court will first determine whether the Athletic Participants Exclusion operates to bar coverage for the underlying *Bash* claims.  The Policy's Athletic Participants Exclusions reads as follows:

EXCLUSION - ATHLETIC PARTICIPANTS

This insurance does not apply to **bodily injury** to any person engaged in:
1.    Any athletic exercise or sports **activity**; or
2.    Managing, coaching or supervising such **activity**

13

> which you sponsor or which is conducted on premises **you** own, rent or control.
>
> **"Activity"** as used herein includes travel or activity in the course of travel to or from any destination for the purpose of practicing for or participating in any such athletic, exercise or sports activity.

(Policy 09-SL-00010206, Doc. No. 1-3, PageID# 106.)

Mid-Continent asserts, and Experiential does not dispute, that Brittney was engaged in an "athletic exercise or sports activity" when she attempted to traverse Hiram House's high ropes course on August 14, 2017. (Doc. No. 64, PageID# 516-18; Doc. No. 66-1, PageID# 571-72.) The Court agrees that Brittney was engaged in an "athletic exercise or sports activity," as those terms are commonly used, at the time of her accident. *See Sport, Merriam-Webster*, https://www.merriam-webster.com/dictionary/sport (last visited Dec. 17, 2021) ("(1) : physical activity engaged in for pleasure; (2) : a particular activity (such as an athletic game) so engaged in"); *see Activity, Merriam-Webster*, https://www.merriam-webster.com/dictionary/activity (last visited Dec. 17, 2021) ("(b) a form of organized, supervised, often extracurricular recreation").

However, Experiential argues in its Motion and Opposition that the plain language of the Athletic Participants Exclusion only precludes coverage for bodily injuries sustained during athletic exercises or sports activities "which [Experiential] sponsor[s] or which is conducted on premises [Experiential] own[s], rent[s], or control[s]." (Doc. No. 66-1, PageID# 572; Doc. No. 69, PageID# 949-51.) Experiential argues that the Bashes' claims are not precluded by the Athletic Participants Exclusion because Experiential neither sponsored BW's orientation program nor owned, rented, or controlled Hiram House's premises. (*Id.*)

Alternatively, Experiential argues, the exclusion is at least ambiguous because it is unclear whether the phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control"

14

modifies prong (2) only, or modifies both prongs (1) and (2).  (*Id.*)  In support of this argument, Experiential points to the Deductible Liability Insurance Endorsement as an example of another Policy provision in which an enumerated list is modified by a sentence that follows.  (Doc. No. 69, PageID# 950-51.)  The Deductible Liability Insurance Endorsement reads as follows:

> **c.**  Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined to all damages and **allocated loss expenses** sustained by any one person because of:
> **(1)**  "Bodily injury";
> **(2)**  "Property damage"; or
> **(3)**  "Bodily injury" and "property damage" combined
> as the result of any one "occurrence".
>
> If damages are claimed for case, loss of services or death resulting at any time from "bodily injury", a separate deductible among will be applied to each person making a claim for such damages.

(Doc. No. 1-3, PageID# 58-59.)  Specifically, Experiential asserts that the line "as the result of any one 'occurrence'" modifies all three items enumerated immediately above it.  (Doc. No. 69, PageID# 951.)  Experiential analogizes the Deductible Liability Insurance Endorsement's qualifying phrase "as the result of any one 'occurrence'" as akin to the Athletic Participants Exclusion's qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" and asserts that "in every instance in the Insurance Policy where there exists a listed item where the line breaks in the middle of the page and there appears a phrase beginning on the next line down, that subsequent phrase is meant to modify each item in the preceding list."  (*Id.*)

In its Opposition and Reply, Mid-Continent argues that the Athletic Participants Exclusion unambiguously bars coverage for the underlying *Bash* claims because the qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" is indented such that it falls entirely under prong (2), meaning that it is intended to apply *only* to prong (2).  (Doc. No. 67, PageID#

15

889; Doc. No. 71, PageID# 983-84.)  Mid-Continent further argues that the Deductible Liability Insurance Endorsement does not support Experiential's argument because the qualifying phrase "as the result of any one 'occurrence'" is plainly not indented but instead is aligned with paragraph (c) and therefore modifies *all* of paragraph (c).  (Doc. No. 71, PageID# 983-84.)  Conversely, according to Mid-Continent, the Athletic Participants Exclusion's qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" is indented so that it falls *only* under prong (2), and therefore modifies *only* prong (2), "Managing, coaching or supervising such activity".  (*Id.*) Moreover, Mid-Continent argues, the plain text of the Athletic Participants Exclusion proves this principle because its definition of "**Activity**" is not indented, but instead is aligned with the first line of the exclusion and therefore applies to prongs (1) *and* (2).  (*Id.*)

The Court concludes that the plain language of the Athletic Participants Exclusion unambiguously excludes coverage for bodily injury claims for any athletic exercise or sports activity, irrespective of the activity's sponsor or who controlled, rented, and/or owned the premises.  The qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" falls *only* under prong (2), "Managing, coaching or supervising such **activity**."  (*See* Doc. No. 1-3, PageID# 106.)  There is also no line break between prong (2) and the qualifying phrase, further suggesting that prong (2) and the qualifying phrase are meant to be read as a single sentence.  (*Id.*) Thus, the Court further concludes that the qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" modifies only prong (2), "Managing, coaching or supervising such **activity**," but does not modify prong (1), "Any athletic exercise or sports **activity**".

The Court is not persuaded by Experiential's argument that the structure of the Deductible Liability Insurance Endorsement's enumerated list and qualifying phrase is analogous to the Athletic

Participants Exclusion.  Indeed, the Deductible Liability Insurance Endorsement's structure is plainly distinguishable from that of the Athletic Participant Exclusion.   The qualifying phrase in the Deductible Liability Insurance Endorsement is clearly aligned with paragraph (c), leaving no doubt that it modifies *all* of paragraph (c).  In the Athletic Participant Exclusion, however, the qualifying phrase is clearly aligned *only* to prong (2).   According to Experiential's own example, the Policy's qualifying phrases modify the text with which they are aligned.  Experiential has not identified, and the Court has not located, any other qualifying phrases within the Policy that mirror the formatting of the qualifying phrase in the Athletic Participants Provision.   In other words, Experiential has not identified a single qualifying phrase that purports to modify an entire enumerated list but is indented so as to fall entirely below only one item within the list.

Moreover, the Athletic Participants Exclusion's "**activity**" definition is not indented under either prongs (1) or (2).   Rather, it is aligned underneath the entire exclusion.  (*See* Doc. No. 1-3, PageID# 106.)  If the qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" was meant to modify *both* prongs (1) *and* (2), it would be aligned to the far left like the definition of "**activity**".   Therefore, the Court concludes that the language of the Athletic Participants Exclusion is unambiguous.   Under the plain language of the exclusion, the insurance does not apply to bodily injury to any person engaged in "any athletic exercise or sports **activity**" *or* to any person "[m]anaging, coaching or supervising such **activity** which **you** sponsor or which is conducted on premises **you** own, rent or control."  (Doc. No. 1-3, PageID# 106.)

Having concluded that the Athletic Participants Exclusion is unambiguous, the Court will apply the plain language of the exclusion to the facts in this matter.   It is undisputed that all of the underlying allegations in the *Bash* lawsuit arise from bodily injuries that Brittney sustained while

17

participating in a "sports activity"—i.e., the high ropes course at Hiram House.  There is no indication that Brittney was "[m]anaging, coaching or supervising" the high ropes course.  Additionally, Experiential did not sponsor BW's Honors Program Orientation, nor did it own, rent, or control Hiram House's premises.  Therefore, prong (2) and its qualifying phrase "which **you** sponsor or which is conducted on premises **you** own, rent or control" do not apply.  Accordingly, the Court concludes that the Athletic Participants Exclusion bars coverage for all claims alleged against Experiential in the underlying *Bash* lawsuit and, therefore, Mid-Continent has no duty to defend Experiential in the underlying lawsuit.  *See Crum & Forster*, 156 Ill. 2d at 398.

Even if the Court assumed *arguendo* that the Athletic Participants Exclusion was ambiguous as Experiential asserts, the May – June 2017 emails between Experiential's insurance broker, Mid-Continent's insurance agent, and Mid-Continent resolve any such ambiguity in Mid-Continent's favor.  *See CNA Cas. of California*, 836 N.E.2d at 736 (concluding extrinsic evidence is admissible to resolve a facial ambiguity in an insurance contract).  The May – June 2017 emails demonstrate that both Experiential and Mid-Continent were aware that the Policy's Athletic Participants Exclusion purported to exclude all bodily injury coverage for any athletic participant, regardless of the event's sponsor or who controlled the premises on which the event took place.  (*See* Doc. No. 64-1, PageID# 546.)  On May 3, 2017, Experiential's insurance broker contacted Mid-Continent's insurance agent to inquire "what exactly" the Policy covered since the Athletic Participants Exclusion "exclude[ed] BI claims related to sports or athletic."  (*Id.*)  Mid-Continent clarified that it covered "the building of the zip line, but not the use of the zip line."  (*Id.* at PageID# 545.)  On June 2, 2017, Mid-Continent further explained that the Policy covered bodily injury to "others not engaged in the activity which is still an exposure for the insured as well as any [property damage] from the failure of their products

18

sold." (*Id.* at PageID# 540.)  According to these emails, Experiential was well-aware that its Policy, as written, provided some bodily injury coverage but also excluded all bodily injury coverage for athletic participants.

Moreover, these emails further demonstrate that Experiential understood its Policy to preclude athletic participants' bodily injury claims based on Experiential's repeated requests to replace the operative Athletic Participants Exclusion with a different exclusion, Form CG 2101.  (*Id.* at PageID# 542-43.)  Form CG 2101 is a standardized athletic participant exclusion form developed by Insurance Services Office, Inc.  *See Sciolla v. West Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 597 n.2 (E.D. Penn. 2013).  Form CG 2101 reads, in relevant part, as follows: " . . . this insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor." *Id.* at 597.  On its face, Form CG 2101 is distinguishable from the operative Athletic Participants Exclusion because Form CG 2101 does not include the same alleged ambiguity as to whether coverage is precluded based on the insured's status as sponsor of the activity and/or owner of the premises.  Experiential's multiple inquiries into whether Mid-Continent would replace the operative Athletic Participants Exclusion with Form CG 2101 demonstrate that Experiential was aware that the Policy, as written, barred coverage for *any* bodily injury claims brought by athletic participants.  Therefore, even if the Court assumed *arguendo* that the Athletic Participants Exclusion was ambiguous, the May – June 2017 emails would resolve any such ambiguity in Mid-Continent's favor because the emails demonstrate that the parties understood the Policy to broadly exclude all coverage for athletic participants' bodily injuries.

Because the Athletic Participants Exclusion bars coverage for all claims alleged in the underlying *Bash* lawsuit and, therefore, Mid-Continent has no duty to defend Experiential in the *Bash*

lawsuit, the Court need not decide whether the other cited Policy exclusions (including the Climbing Gyms Exclusion, the Testing or Consulting Errors and Omissions Exclusion, the Training and/or Inspections Exclusion, the Inspection, Appraisal and Survey Exclusion, and the Coverage C—Medical Payments Exclusion) also bar coverage of one or more of the claims in the *Bash* litigation. Moreover, because the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify where there is no duty to defend. *See Crum & Forster*, 156 Ill. 2d at 398. Accordingly, the Court concludes that Mid-Continent also has no duty to indemnify Experiential for any judgment or settlement entered in the *Bash* lawsuit.

### C. Defense Costs Endorsement

Mid-Continent and Experiential each seek summary judgment on Count Eight of Mid-Continent's Complaint, that the Policy's Defense Costs Endorsement entitles Mid-Continent to recoup the defense costs incurred while defending Experiential in the *Bash* lawsuit. (Doc. No. 64, PageID# 531; Doc. No. 66-1, PageID# 568.) The Defense Costs Endorsement (Form IL 01 62 10 13) reads as follows:

**ILLINOIS CHANGES – DEFENSE COSTS**

This endorsement modifies insurance provided under the following: . . .

COMMERCIAL GENERAL LIABILITY COVERAGE PART . . .

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

    **1.** Section I of the Commercial General Liability . . .

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

> The right to reimbursement for the defense costs under this provision will
> only apply to defense costs we have incurred after we notify you in writing
> that there may not be coverage, and that we are reserving our rights to
> terminate the defense and seek reimbursement for defense costs.

(Doc. No. 1-3, PageID# 95.)

On September 4, 2019, Mid-Continent notified Experiential via letter that it would "agree to defend Experiential Systems in the *Bash* Lawsuit, subject to a full and complete reservation of rights including, but not limited to, the right to assume or withdraw from the defense, the right to deny indemnity coverage, and the right to bring a declaratory judgment action against Experiential Systems, seeking a declaration of no coverage relative to the *Bash* Lawsuit." (Doc. No. 1-4, PageID# 115.)  The letter further provided:

> Mid-Continent has agreed to defend Experiential Systems pursuant to a reservation of
> rights.  Mid-Continent specifically reserves the right to terminate the defense of
> Experiential Systems and to seek reimbursement for defense costs as permitted by the
> terms of the Policy's "Defense Costs" Endorsement.

(*Id.* at PageID# 126.)

In its Motion, Mid-Continent argues that it is entitled to recoup the defense costs incurred in its defense of Experiential in the *Bash* lawsuit because it expressly reserved the right to recoup defense costs pursuant to this Policy endorsement and it owes no duty to defend or indemnify Experiential in the *Bash* lawsuit.  (Doc. No. 64, PageID# 532.)

In its Motion, Experiential argues that the Defense Costs Endorsement allows Mid-Continent to unilaterally change the terms of the contract in contravention of Illinois law, which bars insurers from recovering defense costs pursuant to a reservation of rights absent an express provision to that effect in the Policy.  (Doc. No. 66-1, PageID# 569.)  Experiential argues that under the endorsement, the determination of whether defense costs can be recouped is not left to the Court but whether Mid-

21

Continent determines there is no coverage.  (*Id.* at PageID# 569-70.)  Experiential further argues that the endorsement only allows Mid-Continent to recoup defense costs *after* it has determined that coverage is not available under the Policy.  (*Id.* at PageID# 571.)  According to Experiential, because Mid-Continent determined prior to the filing of the *Bash* lawsuit that Experiential's Policy did not include coverage for the underlying claims before Mid-Continent reserved its rights and tendered a defense, Mid-Continent cannot now seek recoupment under this endorsement.  (*Id.*)

In Illinois, a liability insurer "may choose from three options when it is asked to defend an insured against claims that it believes might exceed the scope of coverage: (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend."  *Littlefield v. McGuffey*, 979 F.2d 101, 105 (7th Cir. 1992) (applying Illinois law).

Further, an insurer may not "unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend."  *Gen. Ag. Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 162-63 (Ill. 2005).  "[I]f an insurer wishes to retain its right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy*, the insurer is free to include such a term in its insurance contract*," but "[a]bsent such a provision in the policy, [ ] an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter."  *Id.* at 163 (emphasis added).

The Court concludes that Mid-Continent is entitled to recoup the costs incurred while defending Experiential in the underlying *Bash* lawsuit.  The Policy's Defense Costs Endorsement

expressly provides that if Mid-Continent initially provides Experiential with a defense but later determines that the underlying claims are not covered under the Policy, then Mid-Continent has "the right to reimbursement for the defense costs" it incurred.  (Doc. No. 1-3, PageID# 95.)  Neither party suggests this endorsement is ambiguous or unclear in any way.  Accordingly, because the Policy expressly bars coverage of the underlying *Bash* claims, Mid-Continent has the right to seek reimbursement from Experiential for the costs it incurred while defending the *Bash* lawsuit based on the plain text of the Defense Costs Endorsement.

Experiential cites only one case, *General Agents Ins. Co. of America v. Midwest Sporting Goods Co.* ("*Gainsco*"), in support of its argument that Mid-Continent should be prevented from recouping its defenses costs.  (Doc. No. 66-1, PageID# 569; Doc. No. 69, PageID# 947.)  Experiential argues that *Gainsco* precludes Mid-Continent from "unilaterally chang[ing] the terms of the contract" by demanding recoupment of its defense costs.  (*Id.*)  However, the instant Policy differs from the *Gainsco* policy because the *Gainsco* policy did not provide for reimbursement of defense costs in the event that the underlying claim was not covered by the policy.  *General Agents Ins. Co.*, 215 Ill. 2d at 164.  Indeed, the Illinois Supreme Court recognized that "if an insurer wishes to retain its right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy, the insurer is free to include such a term in its insurance contract," but "[a]bsent such a provision in the policy, [ ] an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter."  *Id.*  Experiential's Policy clearly includes such a provision.  Thus, the policy at issue in *Gainsco* is inapposite because the instant Policy *expressly* provides that Mid-Continent may seek reimbursement of defense costs if it is determined that the underlying claim is not covered by the Policy.  *See also AU Elec., Inc. v.*

*Harleysville Group, Inc.*, 82 F. Spp. 3d 805, 813 (N.D. Ill. 2015) (observing that "*Gainsco*'s bottom line was that, having chosen to tender a defense, the insurer could not recoup the costs of that defense *absent an explicit contractual clause allowing it to do so*.") (emphasis added).

Experiential's other arguments against Mid-Continent seeking reimbursement of its defense costs are also not persuasive.  First, the Court disagrees that that Defense Costs Endorsement leaves the question of coverage up to the subjective belief of the insurer and divests the Court of its ability to interpret the Policy in this declaratory judgment action.  As set forth above, the Court has interpreted the plain language of the Athletic Participants Provision to preclude coverage for the underlying claims in the *Bash* litigation—irrespective of whether Mid-Continent previously denied coverage based on the same provision or not.

The thrust of Experiential's second argument appears to be that Mid-Continent never should have provided Experiential with a defense in September 2019 after Mid-Continent's October 2017 determination that the Policy did not cover Brittney's claims.  (*See* Doc. No. 66-1, PageID# 570-71; Doc. No. 69, PageID# 948-49.)  This argument lacks merit.  Illinois law permits an insurer to seek a declaratory judgment as to its duty to defend and/or indemnify, defend the insured under a reservation of rights, or refuse to defend at all but risk a later court finding that it breached its duty to defend.  *Littlefield*, 979 F.2d at 105.  Here, Mid-Continent chose to seek a declaratory judgment as to its duty to defend Experiential *and* provided Experiential with a defense under a reservation of rights (including its right to reimbursement of defense costs), pending the outcome of this declaratory judgment action.  Mid-Continent was not obligated to refuse to defend Experiential and risk the "peril that it might later be found to have breached its duty to defend." *Littlefield*, 979 F.2d at 105 (internal quotation omitted).

Accordingly, the Court concludes that Mid-Continent is entitled to recoup the defense fees it incurred in its defense of Experiential in the *Bash* lawsuit.

### D.     Experiential's Counterclaims

Experiential initially filed four counterclaims against Mid-Continent on January 23, 2020, but amended its counterclaims to include a fifth counterclaim on May 12, 2020.  (Doc. Nos. 15, 43.) Experiential's original four counterclaims are identical to its first four amended counterclaims.  (*Id.*) However, Mid-Continent moves for summary judgment only on Experiential's original counterclaims, not the operative Amended Counterclaims.  (Doc. No. 64, PageID# 533.)  Indeed, Mid-Continent's Motion does not address Experiential's fifth counterclaim, insurer bad faith, at all. (*Id.*)  Experiential opposed Mid-Continent's Motion for Summary Judgment as to its counterclaims on the merits but failed to note that Mid-Continent moved for summary judgment on the original counterclaims, rather than the operative Amended Counterclaims.  (Doc. No. 69, PageID# 961-64.) Because Mid-Continent moves for summary judgment on Experiential's initial four counterclaims, which are identical to the first four counterclaims of the operative Amended Complaint, and because Mid-Continent cannot have acted in bad faith when it had no duty to defend Experiential under the Policy, the Court will address all five counterclaims below.  *See Wimbush v. Wyeth*, 619 F.3d 632, 647 (6th Cir. 2010) (White, J., concurring in part and dissenting in part) (noting that district courts are permitted to grant summary judgment sua sponte in certain limited circumstances, so long as the losing party was on notice that it had to come forward with all of its evidence) (citing *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir.2000)).

25

### 1.    Experiential's Contract-Based Counterclaims (Counts One and Two)

In Counts One and Two, Experiential asserts claims for anticipatory breach of contract and breach of contract, respectively.  (Doc. No. 43, ¶¶ 29-45.)  Both Counts One and Two are premised on Experiential's assertion that Mid-Continent is obligated to defend and indemnify Experiential in the *Bash* lawsuit because the underlying claims fall within the coverage of the Policy.  (*Id.*)

The Court concludes that Experiential's contract-based counterclaims do not state a cause of action.  As set forth above, the Athletic Participants Exclusion bars the underlying claims in the *Bash* lawsuit and, thus, Mid-Continent has no duty to defend or indemnify Experiential.  Accordingly, Experiential cannot assert anticipatory breach of contract or breach of contract claims against Mid-Continent because Mid-Continent is not contractually obligated to defend or indemnify Experiential with respect to the *Bash* lawsuit.

### 2.    Experiential's Fraud-Based Counterclaims (Counts Three and Four)

In Counts Three and Four, Experiential asserts claims for fraud and fraudulent misrepresentation, as well as fraudulent concealment, respectively.  (Doc. No. 43, ¶¶ 47-65.)  Both claims are premised on Experiential's assertion that Mid-Continent misrepresented that the Policy would provide liability coverage for Experiential's business and the types of bodily injury claims brought in the *Bash* lawsuit and suppressed material facts as to the true nature of the Policy, with the intention of defrauding Experiential.

The Court concludes that Experiential's fraud-based counterclaims do not state a cause of action.  Experiential offers no evidence to suggest that Mid-Continent ever made any misrepresentation regarding the Policy's coverage, nor any evidence to suggest that a discrepancy ever arose between Mid-Continent and Experiential as to what coverage the Policy provided—let

26

alone evidence that Mid-Continent fraudulently procured such a discrepancy. As discussed above, the May – June 2017 emails between Experiential, Hibbs-Hallmark, Veracity, and Mid-Continent demonstrate that Experiential and Hibbs-Hallmark were aware as of May 3, 2017 that the Policy contained an exclusion that purported to exclude all bodily injury coverage for any athletic participant, regardless of who sponsored the event or controlled the premises. (*See* Doc. No. 64-1, PageID# 546.) Moreover, these emails also indicate that Experiential was aware that the Policy's Athletic Participants exclusion, Form ML 1287, was more broadly exclusionary than the Insurance Services Office, Inc.'s standardized athletic participant exclusion, Form CG 2101. *See Sciolla v. West Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 597 n.2 (E.D. Penn. 2013) (Form CG 2101, which reads "this insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor" is a "standardized insurance exclusion developed by Insurance Services Office, Inc."). Given Experiential's multiple inquiries via its insurance broker regarding the scope of the Athletic Participants Exclusion, it appears that Experiential was aware prior to Brittney's accident that its Policy excluded *all* bodily injury coverage to *any* athletic participant, regardless of whether Experiential sponsored the athletic event or hosted the event on its premises. Additionally, the Court is not persuaded by Experiential's argument that none of these emails "show evidence of ESI's knowledge regarding the policy at the time it was entered into—well prior to the exchange" in 2017. (Doc. No. 69, PageID# 963.) Experiential offers no evidence of its knowledge regarding the Policy's contents prior to its September 16, 2016 renewal. Experiential's bald assertions, without any evidence, are insufficient to create a genuine issue of material fact. *See Cox*, 53 F.3d at 150.

Moreover, to the extent that Experiential implies—but never explicitly argues—that Mid-Continent secretly inserted the broader Form ML 1287 Athletic Participants Exclusion instead of the narrower Form CG 2101 to defraud Experiential, such an argument lacks merit. Under Illinois law, "'a duty is imposed upon the insured to have read the policy and to have informed the insurer of any discrepancy prior to the time of filing a claim.'" *Gaudina v. State Farm Mut. Auto. Ins. Co.*, 8 N.E.3d 588, 597 (Ill. Ct. App. 1st Dist., Mar. 28, 2014) (quoting *Floral Consultants, Ltd. v. Hanover Insurance Co.*, 470 N.E.2d 527 (1984)). To the extent there was a discrepancy between the policy that Experiential sought and the policy that Mid-Continent issued, Experiential had a duty to review its own Policy and inform Mid-Continent of any discrepancies. *Id.* If, after reviewing its Policy, Experiential was concerned about the potential overbreadth of Form ML 1287, it was free to terminate its Policy with Mid-Continent and obtain a different policy that incorporated CG 2101 from a different insurer. Experiential did not do so and so Form ML 1287, which was in effect at the time of Brittney's injuries, precludes coverage for all claims in the *Bash* litigation. Accordingly, the Court concludes that Experiential's fraud-based counterclaims do not state a cause of action.

### 3. Experiential's Insurer Bad Faith Counterclaim (Count Five)

In Count Five, Experiential asserts that Mid-Continent acted in bad faith when it waited until the Bashes filed the underlying lawsuit before Mid-Continent filed the instant declaratory judgment action. The Court concludes that Experiential's "insurer bad faith" counterclaim necessarily fails, irrespective of whether Mid-Continent properly moved for summary judgment, because the plain language of the Policy precludes coverage for all claims asserted in the underlying *Bash* litigation and Mid-Continent is therefore neither obligated to defend nor indemnify Experiential. Therefore, Mid-Continent could not have acted in bad faith when it initially denied coverage in 2017, or when

it agreed to provide a defense for Experiential in 2019, subject to a reservation of rights and pending the outcome of this declaratory judgment action.  Moreover, as discussed above, Mid-Continent was not obligated to refuse to defend Experiential and risk the "peril that it might later be found to have breached its duty to defend" in this declaratory judgment action.  *Littlefield*, 979 F.2d at 105 (internal quotation omitted).  Illinois law permits an insurer to seek a declaratory judgment as to the scope of the insurer's duty to defend and/or indemnify while *also* providing an insured with a defense subject to a reservation of rights.  *Id.*  Mid-Continent did just that.  Further, Mid-Continent was not required to initiate a costly declaratory judgment action to determine its coverage obligations towards Experiential absent a lawsuit against Experiential.  Accordingly, the Court concludes that Experiential's insurer bad faith claim necessarily fails.

## IV.     Conclusion

Accordingly, for the reasons set forth above, Mid-Continent's Motion for Summary Judgment is GRANTED.  Experiential's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**


                                                          *s/Pamela A. Barker*
                                                          PAMELA A. BARKER
Date:  January 7, 2022                                    U. S. DISTRICT JUDGE

29